DANIEL HARTNETT AND OTHERS, APPELLANTS, *v.* STEPHEN S. WANDELL, EXECUTOR, ETC., RESPONDENT.

*Ecclesiastical law — Surrogate — powers of — whence derived — Executor must be named in will.*

The ecclesiastical law of England is no part of the law of this State, except so far as it was established by the statutes and resolutions of the Colony of New York.

The appointment of executors by construction or implication, is not favored; and in doubtful cases, administration with the will annexed must be resorted to.

Under the provisions of the statutes of this State, the surrogate has no power to issue letters testamentary to a person not named in the will, and who cannot be identified by any process of construction or implication applicable to the language of the will. The testator may name any one he pleases to be his executor, but the law does not sanction his right to appoint an agent or attorney who may, after his death, designate or appoint such executor.

*Matter of Bronson* (1 Tucker, 467) followed.

APPEAL from an order of the surrogate of Albany county, refusing to revoke letters testamentary, issued by him to the respondent, under the will of Andrew Alexander.

By said will, in the second clause, all the rest of the testator's property, real and personal, was given to his wife, Mary E. Alexander, absolutely. The will concludes as follows:

"Lastly, I hereby nominate and appoint my said wife the executrix of this my will, hereby revoking all former wills by me made, and request that such male friend as she may desire, shall be appointed with her as coexecutor."

The will was proved, and letters issued to the wife, June 27, 1873. On the 2d of March, 1874, on the petition of the wife, letters testamentary were issued to the respondent. The appellants' creditors of the estate, petitioned the surrogate to revoke the letters to Wandell, which petition was dismissed, and the application denied.

*Robt. H. McClellan*, for the appellants.

*Edgar L. Fursman*, for the respondent.

BOARDMAN, J.:

The ecclesiastical law of England is not in force in this country ; * nor was it, strictly speaking, any part of the common law. † It is true, that, in the earlier history of England, the common law was administered, to a greater or less extent, by the spiritual courts. But, long before our Revolution, a distinct separation of jurisdictions was established, and is still retained. By article 1, section 17, of the Constitution of this State, the common law of England was alone made a part of the law of this State. The ecclesiastical law is therefore no part of our law, except so far as it was established by the statutes and resolutions of the Colony of New York. By reference to the interesting opinion of Judge DALY, in *Brick's Estate*, ‡ it will be seen that the jurisdiction of the spiritual courts was never expressly given to the prerogative or mayor's courts of the Province. As such statutes, resolutions and the common law constituted our law after 1775, 1777, the courts exercising jurisdiction in testamentary matters, were bound by such law, except so far as it was thereafter modified by our State laws.

Even in England, however, it is by no means clear, that the power claimed by the respondent was exercised by their courts prior to the present century. The cases cited by the learned surrogate to sustain his decision, were all since 1820, and a majority since 1840, and are therefore insufficient evidence of the practice of such courts in the last century, even if, by implication or necessity, it had been adopted by us. But I judge that such was not the practice. § The executors should be named in the will, or appointed expressly, or by necessary inference. But the appointment of executors by construction or implication is not favored, and, in doubtful cases, administration with the will annexed must be resorted to. The appointment of an executor is a mark of personal confidence and trust. But as the rights of others are dependent upon the faithfulness, intelligence and integrity of the trustee, courts will not look with favor upon a delegation of that power, given by the will to others, or permit the judgment and discretion, demanded of the testator, to be exercised by another. In England, the execu-

* Youngs v. Ransom, 31 Barb., 49.    † 3 Black. Com., ch. 4 and 5
‡ 15 Abb. Rep., 12.    § 2 Bl. Com., 504; Dayt. on Sur., 206, etc

tor of an executor takes the property unadministered.[*] But our statutes forbid it. [†]

If, however, I am wrong in supposing that the law and practice of the ecclesiastical courts never had any binding force in the Colony or State of New York, I still think a fair construction of the statutes of this State will prove equally unfavorable to respondent. By the Revised Statutes [‡] the jurisdiction of the surrogates' courts was created, limited and defined. Under that law, it is conceded this appointment of the respondent could not have been made. The surrogate was thereby forbidden to exercise any jurisdiction, not given by statute, under pretense of incidental power or constructive authority. Experience soon showed the difficulties and embarrassments in the way of doing what the law plainly required and expected surrogates to do. So great and burdensome did this restriction become, that the act of 1837 was passed, in which this restrictive clause was repealed, and the powers of the court enlarged. The powers of the court did not cease thereby to be derived from the statutes which also imposed its duties. But by such repeal, the surrogate was permitted to invoke the aid of incidental power and constructive authority, to aid him in the discharge of his jurisdictional duties. The equities of the parties in interest, need not be sacrificed for the want of such incidental powers as should be inherent in every court for the accomplishment of the purposes of its creation. The legislature could not foresee and provide for all of these; hence the wrong and the repeal.

The statutes [§] provide who shall issue letters testamentary; and by 2 Revised Statutes, 69, section 1, it is provided when, and to whom, such letters shall be issued, viz. : " to the persons therein named as executors, who are competent by law to serve as such, and who shall appear and qualify." Administration with the will annexed, is provided by section 14, page 71, " as if no executors were named in such will." [||]

Now, in view of these positive provisions of the statute, can it be said that the surrogate has power to issue letters to a person not

[*] 2 Bl. Com., 506.      [†] 2 R. S., 71,72, § 17.      [‡] Tit. 1, chap. 2, pt. 3. § 2 R. S., 60, § 28.

[||] See also like words in §§ 3, 5, 6, 8, 9, 12, 15, 16, 18, 21, on pp. 70, 71, 72 of 2 R. S.

named in the will, and who cannot be identified by any process of construction or implication applicable to the language of the will? Does not the law limit and define the persons who may be executors, and provide for their competency? The testator may name any one he pleases to be his executor, but the law does not sanction his right to appoint an agent or attorney, who may, after his death, designate or appoint such executor. As well might an attorney, under a power, continue to act after the death of his principal.

Besides, does not the fact that Mrs. Alexander, by taking letters in her own name, without the exercise of the power of appointment, waive it? She neglects to ask that any person may be appointed coexecutor with her. Does she not thereby, in effect, renounce the right of appointment, given her by the will?

The novelty of the case is such that but one direct authority has been presented. That is the opinion of Mr. Surrogate Tucker, in the *Matter of Bronson.** The reasoning in that opinion is very satisfactory, and to my mind conclusive. Fully concurring with the learned surrogate of the city of New York, I think the surrogate of Albany county erred in issuing letters testamentary to the respondent, and in refusing to revoke such letters upon the petition of the appellants.

The decision of the surrogate of Albany county, dismissing the petition of the appellants, and denying their prayer for relief, is reversed; and the proceedings are remitted to said surrogate's court, with directions that an order be entered, revoking the letters testamentary heretofore issued to Stephen S. Wandell, respondent. Costs of this appeal are granted to the appellants against the respondent personally.

Present — MILLER, P. J., BOOKES and BOARDMAN, JJ.

Ordered accordingly.

* 1 Tucker, 467.